OPINION OF THE COURT
Stuart Namm, J.
Defendant is charged with a violation of subdivision 1 of section 260.10 of the Penal Law, endangering the welfare of a child. He seeks omnibus relief, including, inter alia, an application for an order dismissing the information pursuant to CPL 170.35 on the grounds that the same is legally insufficient.
It is alleged in the information that the defendant, a 17-year-old youth at the time of the incident, did knowingly assist a 15-year-old female "in running away from home and finding lodging so that she would not be placed in Madonna Heights Home”. The information, which is subscribed on information and belief, is supported by two depositions; one by the girl’s father, and the second, by a 37-year-old woman who *687 admits to lodging the girl at her home, while her parents were unaware of her whereabouts.
The deposition of the father alleges that his daughter disappeared for four nights after a decision had been made to place her "in Madonna Heights School for Girls because we could not cope with her any longer.” The extent of defendant’s alleged involvement consisted of his being present when a second youth, seeking a place for the girl to stay for the night, brought her to the afore-mentioned woman’s home and told her that she "had run away from home because her mother was an alcoholic”. In addition, the defendant is alleged to have taken the girl out one night, while she stayed in the woman’s home, and to have "brought her back at about 11:00 P.M.”
In short, the facts of this case are not unlike other stories which unfold daily in our highly complex and troubled society, and which are disturbingly similar to the facts of a case which this court was called upon to decide little more than one year ago. (People v Buscemi, 89 Misc 2d 174.) In the earlier case, the 16-year-old defendant was charged with both endangering the welfare of a child (a 14-year-old female runaway) and unlawful imprisonment. The former charge was dismissed at the close of the People’s case, and the latter charge at the close of trial. In that case, where this court had the advantage of having heard all the facts at trial, it was concluded (p 177) that the conduct of the defendant was “a matter for compassion and understanding, rather than condemnation and derision”, and although inferred but unsaid, not a matter for criminal prosecution. However, in the instant case it is necessary to consider only the information and the two supporting depositions.
An information is sufficient on its face when it substantially conforms to the requirements of CPL 100.15; and, when the allegations of the factual part of the information, together with those of any supporting depositions, which may accompany it, provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information; and, nonhearsay allegations of the factual part of the information and/or of any supporting depositions, establish, if true, every element of the offense charged and the defendant’s commission thereof. (CPL 100.40, emphasis added.)
According to CPL 70.10 (subd 2), reasonable cause to believe that a person has committed an offense exists "when evidence *688 or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it.”
"Evidence which is not 'legally sufficient’ may well provide 'reasonable cause to believe that a person has committed an offense.’ ” (Denzer, Practice Commentary, McKinney’s Cons Laws of NY, Book 11A, CPL 70.10.)
Such are the standards by which a court must decide the legal sufficiency of an information placed before it. However, persons of "ordinary intelligence, judgment and experience” may differ greatly in their opinions as to whether, given a particular set of facts and circumstances, it is reasonably likely that the defendant committed the offense as charged.
In People v Harrison (58 Misc 2d 636, 639), where the court had to consider the sufficiency of an information before it under the standards prescribed by the Code of Criminal Procedure, that court applied the test of "probable cause”, pointing out that "There may be room for disagreement as to whether certain facts are sufficient, but there is no room for disagreement with the proposition that some facts or some legal evidence must be supplied.” Under the present law the fact or circumstances must be "collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and.experience” (CPL 70.10, subd 2).
Since the Legislature, in its wisdom, has seen fit to couch the language of section 260.10 of the Penal Law in very general terms, and the Court of Appeals has upheld the constitutionality of its predecessor statute, section 483 of the Penal Law (People v Bergerson, 17 NY2d 398), the lower courts are left to consider the facts of every information charging endangering the welfare of a child on a case by case b^sis. This is especially true, in cases such as the case at bar, where the facts appear to be one of first impression, and where the court does not have the benefit of judicial precedent for guidance.
The essence of the charge against the defendant is that he assisted a 15-year-old girl in running away from her parents’ home for a period of four days. It is important to note that nowhere is it alleged that the defendant’s conduct "tended to impair the child’s, morals” (People v Gibson, 232 NY 458, 462); or that she had entered "upon the path of wrongdoing” and *689 was encouraged to continue upon that path, instead of being turned aside (People v Myrenberg, 146 App Div 854, 857); or that his conduct was likely to injure the morals of the child (People ex rel. Kwiatkowski v Trenkle, 169 Misc 687); or that she was exposed to an atmosphere which created a potential for endangerment to the physical, mental or moral welfare of the child (People v Pierce, 19 AD2d 621), except in the most conclusory form. Nor, is the defendant a married man, not living with his wife, found in the girl’s room late at night, while she was clad in pajamas (People v Caminiti, 28 NYS2d 133). On the contrary, he is a youthful cohort, whose conduct towards the girl appears to have been nothing less than exemplary, as described in the supporting depositions.
If this court were to uphold the validity of the information at issue, it would have to ignore the unchallenged language of the second deposition, which is part of the res gestae, while giving omniscient effect to the language contained in the parents’ alleged decision to place the girl in a school for girls because the parents could no longer cope with her. Moreover, the will of the 15-year-old child would be subjugated to the will of her parents, one of whom is alleged to be an alcoholic; and the conduct of the defendant would not be measured by the effect, if any, the four-day stay away from home had or could have upon the physical, mental or moral welfare of the child, but rather, by the role, if any, he played in assisting her to stay away from home, the assumption being that such conduct is likely to be injurious to the physical, mental or moral welfare of the child, no matter what the circumstances.
To do so, in the opinion of this court, would be to distort the apparent meaning of section 260.10 of the Penal Law, and ignore the obvious intent of the Legislature, while failing to recognize the advances made by children in this period of enlightenment with respect to children’s rights.
Section 260.10 is the very embodiment of the doctrine of parens patriae, the right of the State to intervene in conduct which is likely to have an adverse effect upon the physical, mental or moral welfare of the child who is deemed to be incapable of protecting himself or herself. However, since Mr. Justice Fortas’ landmark decision, Matter of Gault (387 US 1), where the Supreme Court of the United States recognized that, in the name of parens patriae, and the best interests of the child, the rights of children were being trod upon, there has been "stimulated an interest in the rights of children *690 which has extended the legal benefits to minors far beyond those granted in the decision itself * * * [and] in juvenile courts [cf. Matter of Winship, 397 US 358], schools [cf. Goss v Lopez, 419 US 565], and mental hospitals [cf. Kidd v Schmidt, 399 F Supp 301], adults have found it more difficult to make unilateral decisions involving significant and often fundamental interests of children.” (Bersoff, Representation for Children in Custody Decisions: All that Glitters is not Gault, 15 J Family Law, 27.)
The invocation of the name "Madonna Heights School for Girls” in the supporting deposition, while not meaning to cast aspersions upon this institution, brings to mind the words of Mr. Justice Fortas: "The fact of the matter is that, however euphemistic the title, a 'receiving home’ or an 'industrial school’ for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time. His world becomes 'a building with whitewashed walls, regimented routine and institutional hours. . . .’ Instead of mother and father and sisters and brothers and friends and classmates, his world is peopled by guards, custodians, state employees, and 'delinquents’ ” (Matter of Gault, supra, p 27). That is not to say that the afore-mentioned "school for girls” is an institution for incarceration or that it fits the above description, for this court has no knowledge of such fact, but it is not difficult to contemplate how such a vision could be conjured up in the mind of a 15-year-old who has apparently not been consulted in the decision made in her own best interests and how such vision could result in her decision to seek refuge elsewhere.
Such being the case, can this court find that the minimal conduct of this 17-year-old youth, as alleged in the supporting depositions, provides reasonable cause to believe that the defendant committed the crime of endangering the welfare of a child? The answer must be resoundingly in the negative. To permit this defendant to stand trial as to the charge against him and to expose him to even the unlikely possibility of a criminal conviction, considering all of the facts and circumstances contained in the two supporting depositions, would be a gross miscarriage of justice.
While persons of ordinary intelligence, judgment and experience may disagree as to what facts or circumstances constitute the commission of a punishable offense, all should agree that it could never have been the intention of the Legislature, *691 in adopting section 260.10 of the Penal Law, to ensnare youths in the criminal justice process, who, with no criminal intent, become entangled in the ofttimes tragic web of circumstances affecting children, who are victims of their own perceptions of their life at home. This should be so even though, admittedly, the statute requires no specific criminal intent, only that "the acts were done by the accused knowingly, of his own free will, not by mere accident or inadvertence” (People v Caminiti, 28 NYS2d 133, 135, supra).
In view of the foregoing, the information is dismissed since the same is insufficient as a matter of law.